UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| MILTON COOPER | ) | |
| | ) | |
| *Petitioner*, | ) | |
| v. | ) | No. 1:03-cv-276 |
| | ) | *Judge Curtis L. Collier* |
| RICKY BELL, Warden | ) | |
| | ) | |
| *Respondent*. | ) | |

### MEMORANDUM

Petitioner Milton Cooper ("Petitioner") was sentenced to life imprisonment and a concurrent

eight year sentence following his 1998 convictions for the felony murder of Edward Ray Horner,

a clerk at the Golden Gallon convenience store in Red Bank, Tennessee and conspiring to commit

aggravated robbery .  Petitioner has exhausted his appeals in the Tennessee state courts and the

Court denied his federal habeas corpus petition on March 31, 2005 (Court File Nos. 18 & 19).  On

February 16, 2006, the United States Court of Appeals for the Sixth Circuit denied Petitioner a

certificate of appealability because it found the district court's rulings were not debatable among

jurists of reason (Court File No. 22).  In this Rule 60(b) motion and supplement, Petitioner seeks to

reopen several ineffective assistance claims which he presumably raised in his original § 2254

petition,[1] basing his request for Rule 60(b) relief upon the Supreme Court decisions of *Martinez v.*

---

[1]     Petitioner's original federal habeas petition is not accessible on the Courts electronic
case management system (CM/ECF) and the parties have not filed a copy of it.  In his supplemental
response, Respondent states "[i]n his habeas corpus petition, the petitioner made five specific
allegations of ineffective assistance of counsel." (Court File No. 32, p. 21).  Respondent, however,
does not identify or discuss the specific claims nor argue that the claims Petitioner presents in this
Rule 60(b) motion were not originally presented in his federal habeas petition.  Therefore, the Court
presumes the ineffective assistance of counsel claims raised in the instant Rule 60(b) motion were
raised by Petitioner in his federal habeas petition but deemed barred from review as defaulted since
the Respondent does not argue otherwise.

*Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013).

The matter is before the Court on Petitioner's Rule 60(b) motion requesting relief from judgment in his federal habeas case (Court File No. 25), Respondent's opposition to the motion (Court File Nos. 27, 32, & 35), Petitioner's reply (Court File No. 33), and Petitioner's supplements (Court File Nos. 28, 29, 34, & 36).

As previously noted, although Petitioner's original federal habeas petition is not accessible on CM/ECF and the parties have not filed a copy of it, the Court presumes, for purposes of this discussion, that the ineffective assistance of counsel claims Petitioner presents in this Rule 60(b) motion were originally presented in his federal habeas petition but deemed barred from review as defaulted. Thus, as the Court discerns, Petitioner now seeks to reopen his previously deemed defaulted claims that trial counsel was ineffective, relying upon *Martinez* and *Trevino*.

In his Rule 60(b) motion, Petitioner specifically seeks to reopen the following ineffective assistance of counsel claims: (1) trial counsel failed to investigate and interview witnesses to support Petitioner's alibi claim; (2) trial counsel failed to present expert testimony that Petitioner was not on the crime scene video footage; (3) trial counsel failed to present the fingerprint evidence from the cash register which did not include Petitioner's prints; (4) trial counsel was ineffective for presenting the medical examiner, Dr. King, as a witness; and (5) trial counsel failed to object to the trial court's constructive amendment of the indictment with the jury instructions (Court File No. 25).

Respondent opposes the motion, arguing the United States Supreme Court's decision in *Martinez* and *Trevino* do not apply in Tennessee and do not provide the exceptional circumstance necessary to form the basis for Rule 60(b) relief (Court File No. 27). In addition, without any

analysis, Respondent relies on a recent Sixth Circuit case, *McGuire v. Warden, Chillicothe Correctional Inst.*, 738 Fed. 3d 741 (6th Cir. 2013), wherein the Sixth Circuit concluded that "the single fact that *Trevino* has been decided does not change the balance of these factors [numerous factors courts consider in analyzing whether to grant Rule 60(b)(6) relief] sufficiently to require Rule 60(b) relief[,]" and without determining whether *Trevino* applied to Ohio cases, concluded McGuire's ineffective assistance of counsel claim was not substantial. Presumably, Respondent argues that even if *Martinez* and *Trevino* are applicable in Tennessee, Petitioner is not entitled to Rule 60(b) relief "because intervening law does not generally permit the reopening of finally decided cases, and even if it does in some truly extraordinary cases, this is not such a case." *Id.* at 750.[2]

After reviewing the pleadings and briefs filed by both parties, the supplemental authority, the applicable law, and, to a limited extent, the record of Petitioner's underlying conviction and the habeas record in this case, the Court is not persuaded Petitioner has shown the "exceptional circumstances" required for Rule 60(b)(6) relief. Therefore, for the following reasons, Petitioner has not demonstrated the extraordinary circumstances required to justify relief from final judgment pursuant to Rule 60(b)(6).

## I.  PROCEDURAL BACKGROUND

Petitioner was convicted in the Criminal Court of Hamilton County, Tennessee of first

---

[2]    On March 19, 2014, the United States Court of Appeals for the Sixth Circuit concluded *Martinez* and *Trevino* apply to Tennessee convictions. *Sutton v. Colson,* Case No. 12-6310 (6th Cir. March 19, 2014)  Notably, *Sutton* is not a Rule 60(b) motion, and the Court is persuaded the instant case, even with the application of *Martinez* and *Trevino* to Petitioner's claims, should be resolved based on the Sixth Circuit's recent *McGuire* decision specifically addressing a Rule 60(b) motion.

degree felony murder and conspiracy to commit aggravated robbery in relation to a murder of a convenience store clerk on April 13, 1994, just prior to 11:00 p.m. The jury convicted Petitioner of the crimes, and the trial court imposed a sentence of life imprisonment for the murder conviction and a concurrent eight years imprisonment for the conspiracy conviction. *See Cooper v. State,* No. E2001-01527-CCA-R3-PC, 2002 WL 31548093 (Tenn. Crim. App. Nov. 18, 2002), *perm. app. denied* (Tenn. March 17, 2003).

Petitioner's convictions and sentences were affirmed on direct appeal *State v. Cooper*, No. 03C01-9706-CR-00202, 1998 WL 573409 (Tenn. Crim. App. Sept. 9, 1998), *perm. app. denied,* (Tenn. March 8, 1999) and state post-conviction relief was subsequently denied. *Cooper v. State,* No. E2001-01527-CCA-R3-PC, 2002 WL 31548093 (Tenn. Crim. App. Nov. 18, 2002), *perm. app. denied* (Tenn. March 17, 2003). Petitioner filed a federal habeas corpus petition, which was denied (Court File Nos. 18 & 19). The Sixth Circuit subsequently denied a certificate of appealibility (Court File No. 22). Petitioner filed a petition for a writ of habeas corpus in state court which was dismissed and affirmed by the appellate court. *Cooper v. Carlton,* Slip Copy, 2012 WL 1523960 (Tenn. Crim. App. April 30, 2012), *cert. denied*, 133 S.Ct. 1260 (2013).

Petitioner, citing *Martinez* and *Trevino,* brings the instant Rule 60(b)(6) motion claiming that new intervening law (i.e., *Martinez* and *Trevino*) amounts to "extraordinary circumstances" and therefore, he may now show cause and prejudice for the default found by this Court on his claims that trial counsel rendered ineffective assistance in several instances.[3]

---

[3] Although Petitioner also cites Rule 60(b)(5) he does not explain how it applies to his case, and the Court concludes it does not. Section five provides for relief when "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(5). Petitioner has not demonstrated he meets the criteria for relief pursuant to Rule 60(b)(5).

4

## II.     RULE 60(b)(6)

Federal Rule of Civil Procedure 60(b) enumerates six circumstances under which a party may be relieved from a final judgment or order.  Petitioner is proceeding under Rule 60(b)(6) which provides for relief for "any other reason that justifies relief."  Rule 60(c) requires a motion filed pursuant to Rule 60(b)(6) to be filed within a reasonable time after the entry of the judgment or order.

The Supreme Court has held that relief under this section requires a showing of exceptional or extraordinary circumstances to justify the reopening of a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).  The Sixth Circuit adheres to the view that Rule 60(b)(6) should apply only in exceptional or extraordinary circumstances other than those identified in the preceding five enumerated grounds of Rule 60(b). *East Brooks Books, Inc. v. City of Memphis*, 633, F.3d 459, 465 (6th Cir. 2011); *Hopper v. Euclid Manor Nursing Home, Inc.* 867 F.2d 291, 294 (6th Cir. 1989).  "It is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *McGuire v. Warden, Chillicothe Correctional Inst.,* 738 F.3d at 750 (internal punctuation and citations omitted).

## III.     ANALYSIS

### A.     Petitioner's Contentions

Petitioner's Rule 60(b) motion requests relief from this Court's March 2005 judgment denying his habeas corpus petition.  Petitioner seeks to reopen proceedings on his five ineffective assistance of trial counsel claims; claims which this Court found to be procedurally defaulted in Petitioner's federal habeas proceedings.  More specifically, Petitioner alleges post-conviction

5

counsel was ineffective for failing to raise the following ineffective assistance of trial counsel claims: (1) trial counsel failed to investigate and interview witnesses to support Petitioner's alibi claim; (2) trial counsel failed to present expert testimony that Petitioner was not on the crime scene video footage; (3) trial counsel failed to present the fingerprint evidence from the cash register which did not include Petitioner's prints; (4) trial counsel was ineffective for presenting the medical examiner, Dr. King, as a witness; and (5) trial counsel failed to object to the trial court's constructive amendment of the indictment with the jury instructions (Court File No. 25).

Petitioner seemingly argues the intervening Supreme Court decisions of *Martinez* and *Trevino* qualify as an extraordinary circumstance warranting reopening of his habeas petition. Petitioner maintains the present claims meet the *Martinez* standard as expanded by *Trevino* because Tennessee's procedural framework makes it highly unlikely that a defendant will have a meaningful opportunity to raise an ineffective assistance of counsel claim on direct appeal.[4] Thus, it appears Petitioner relies solely on these two cases as the extraordinary circumstance, since he has not presented any newly developed substantial and credible facts since the denial of his federal habeas petition.

### B. Respondent's Arguments

Respondent opposes Petitioner's motion, arguing *Martinez* does not apply in Tennessee and does not provide an exceptional circumstance necessary to form the basis for Rule 60 relief. In his initial opposition, Respondent relies on the Sixth Circuit's original decision in *Hodges v. Colson*, 711 F.3rd 589, 601-601 (6th Cir. 2013) (Court File No. 27). Notably, the *Hodges v. Colson* decision

---

[4] It appears Petitioner was represented by Mr. Duval and Mr. Meeks at trial, and by Mr. Meeks on direct appeal (Court File No. 25-1).

was subsequently amended and superseded by *Hodges v. Colson*, 727 F.3d 517 (6th Cir. 2013), rendering it less supportive of, but not contrary to, Respondent's position, as the court concluded *Martinez* and *Trevino* were inapplicable because petitioner did not default an ineffective assistance of trial counsel claim.

As previously noted, without providing any analysis, Respondent also relies on a recent Sixth Circuit case, *McGuire v. Chillicothe*, 738 Fed. 3d 741 (6th Cir. 2013). The Court presumes Respondent is arguing that even if *Martinez* and *Trevino* are applicable in Tennessee, Petitioner is not entitled to Rule 60(b) relief "because intervening law does not generally permit the reopening of finally decided cases, and even if it does in some truly extraordinary cases, this is not such a case." *Id.* at 750.

**C.    *Martinez* and *Trevino* Decisions–Not Exceptional Circumstance**

*Martinez* and *Trevino* have changed the legal environment with respect to whether ineffective assistance of post-conviction counsel may establish "cause" to excuse a procedural default of an ineffective assistance of trial counsel claim. There is uncertainty, however, as to the application of this change in Tennessee in relation to Rule 60(b)(6) motions. Habeas petitioners previously have been unable to claim ineffective assistance of counsel in collateral proceedings as a basis for excusing a defaulted claim. *Coleman v. Thompson*, 510 U.S. 722, 756-57 (1991). *Martinez*, however, hewed "a narrow exception" to that general rule, holding where state procedural law requires claims of ineffective assistance of trial counsel to be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the State's initial-review collateral proceeding there was no counsel or counsel in that proceeding was ineffective. *Martinez*, 132 S.Ct. at 1320.

7

The *Trevino* Court, addressing Texas' procedural framework, expanded the application of *Martinez* to a limited extent, concluding "that where, as here, state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies[.]" *Trevino*, 133 S.Ct. at 1921.

The *Martinez* Court specifically noted that "*Coleman* had suggested, though without holding, that the Constitution may require States to provide counsel in initial-review collateral proceedings because 'in [these] cases . . . State collateral review is the first place a prisoner can present a challenge to his conviction[,]' . . . [thus making] the initial-review collateral proceeding a prisoner's 'one and only appeal' as to an ineffective-assistance claim, . . . and this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings." *Id.* at 1315 (quoting *Coleman v. Thompson*, 501 U.S. 722, 755-56 (1991)). The *Martinez* Court, however, did not resolve this constitutional question. *Id.* Instead, specifically concluding "[t]his is not the case, however, to resolve whether that exception exists as a constitutional matter[,]" the Court in *Martinez* "qualifie[d] *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at the initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id. Martinez* limited this exception to cases where state law required claims of ineffective assistance of counsel to be raised in an initial-review collateral proceeding. *Id.* at 1320 (emphasis added). The Court characterized its ruling as an equitable ruling and not a constitutional one. *Id.* 1318-19. *Trevino* did not alter these rulings.

The Sixth Circuit has recently ruled *Martinez* as expanded by *Trevino*, applies to Tennessee convictions. *Sutton v. Carpenter,* No. 12-6310 (6th Cir. March 19, 2014). The Sixth Circuit,

8

however, has not ruled that the application of *Martinez* and *Trevino* to Tennessee cases alone, amounts to an extraordinary circumstance justifying relief under Rule 60(b).

In addition, while the Supreme Court of the United States has not addressed the application of *Martinez* and *Trevino* to a Rule 60(b)(6) motion, the numerous courts that have addressed the issue, have concluded these cases fail to amount to "extraordinary circumstances" warranting relief. *See Nash v. Hepp,* 740 F.3d 1075, 1078 (7th Cir. 2014) ("[A] change in law [*Maples v. Thomas,* 132 S.Ct. 912 (2012), *Martinez,* and *Trevino*] showing a previous judgment may have been incorrect is not an extraordinary circumstance justifying relief under Rule 60(b)(6)."); *Arthur v. Thomas,* 739 F.3d 611, 633 (11th Cir. 2014) ("Even assuming that the *Martinez* rule changed or even affected in some way the decisional law about AEDPA's statute of limitations and equitable tolling, any such change in law is not an extraordinary circumstance warranting relief under Rule 60(b)."); *McGuire v. Warden, Chillicothe Correctional Inst.,* 738 F.3d 741, 750 (6th Cir. 2013) ("The single fact that *Trevino* has been decided does not change the balance of these factors sufficiently to require Rule 60(b) relief."); *Adams v. Thaler*, 679 F.3d 312, 219 (5th Cir. 2012) (finding Fifth Circuit precedents hold a change in decisional law after entry of judgment does not constitute exceptional circumstances under Rule 60(b)(6)), *stay of execution denied*, 132 S.Ct. 1995 (April 26, 2012); *DeJournett v. Luebbers,* Slip Copy*,* 2014 WL 81837 (E.D. Mo., Jan. 9, 2014) ("As the *Martinez* decision only presents a narrow and equitable exception to *Coleman,* that ruling does not constitute extraordinary circumstances to warrant Rule 60(b) relief."); *Ferguson v. Hobbs*, Slip Copy, 2013 WL 4431294, *2 (E.D. Ark. Aug. 16, 2013) (*Martinez* and *Trevino* are not extraordinary circumstances meriting Rule 60 relief); *Sheppard v. Robinson*, 2013 WL 146342 (S.D. Ohio, Jan.

9

14, 2013) (*Martinez* does not qualify as extraordinary circumstances and fact Sheppard was a capital case did not individually or cumulatively amount to extraordinary circumstance), *certificate of appealability granted*, 2013 WL 1346138 (S.D. Ohio, Apr. 2, 2013); *Tilcock v. Budge*, 2013 WL 2324452, at *2 (D. Nev. May 28, 2013) (noting virtually every court that has examined *Martinez* in the context of Rule (60)(b)(6) has rejected the notion the case satisfies the "extraordinary circumstances" requirement and collecting cases); *Jackson v. Ercole*, 2012 WL 5949359 (W.D. N.Y. Nov. 28, 2012) (even if *Martinez* were applicable, no showing it qualifies as an extraordinary circumstance); *Haynes v. Thaler*, 2012 WL 4739541 (S.D. Tex. 2012) ("*Martinez* does not apply to habeas cases arising from Texas courts and, even if it did apply, Haynes has not shown extraordinary circumstances under Rule 60(b)(6)"), *cert. granted, judgmt. vacated*, 133 S.Ct. 2764 (June 3, 2013). *But see Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012) (affirming denial of Rule 60(b) motion but concluding the nature of the change in law by *Martinez* is remarkable, albeit limited, development weighing slightly in favor of Rule 60(b)(6) relief), *cert. denied*, 133 S.Ct. 55 (2012), and *Barnett v. Roper*, 941 F.Supp. 2d 1099 (E.D. Mo., 2013) (noting other district courts, including courts with capital cases pending have rejected that *Martinez* satisfies Rule 60(b)'s extraordinary circumstances requirement, but concluding because Barnett diligently pursued his underlying substantive claim of ineffective assistance of trial counsel and its procedural default status, expeditiously filed his Rule 60(b) motion three months after *Martinez* was issued, the ground for relief was certified as appealable when denying habeas relief, and in the present proceeding his underlying claim of trial counsel's ineffectiveness is substantial, the change in the law along with these other factors satisfied the high standard of Rule 60(b)(6)).

Although the Court's research has not revealed a Sixth Circuit or Supreme Court decision

permitting a Tennessee petitioner to reopen a case under Rule 60(b)(6) based solely on the change in law under *Martinez* and *Trevino,* the Sixth Circuit recently ruled that *Martinez* and *Trevino* "permit a habeas petitioner challenging a Tennessee conviction to assert the ineffective assistance of post-conviction counsel as "cause" to excuse the petitioner's procedural default of a claim that his trial counsel was constitutionally ineffective." *Sutton v. Carpenter,* No. 12-6310 (6th Cir. March 19, 2014). The Sixth Circuit, however, as discussed above, did not find *McGuire* was entitled to Rule 60(b) relief based solely on *Trevino*. *McGuire v. Warden, Chillicothe Correctional Inst.,* 738 F.3d at 750. Also as mentioned above, the Fifth Circuit considered the issue in *Adams v. Thaler* and concluded "the *Martinez* decision is simply a change in decisional law and is not the kind of extraordinary circumstance that warrants relief under Rule 60(b)(6)." *Id.* at 320 (internal quotations omitted). The United States Court of Appeals for the Ninth Circuit affirmed the denial of a Rule 60(b) motion holding that, although "the nature of the intervening change of law in *Martinez*" was a factor weighing "slightly" in favor of reopening the case, other factors weighed against doing so. *Lopez*, 678 F.3d at 1135-36. Specifically, the Ninth Circuit found that petitioner's lack of diligence in pursuing the issue during federal habeas proceedings, the interest in finality, the degree of connection between the petitioner's case and *Martinez*, and the concern of comity weighed against reopening the case and finding an extraordinary circumstance.

The Sixth Circuit has instructed that "[t]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009). In *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985) the Sixth Circuit

11

concluded a change in the law and the unique fact that it occurred while the case was on remand to the district for reconsideration of a motion for a new trial, but prior to the evidentiary hearing, compelled the granting of the Rule 60(b)(6) motion,

The Court is cognizant that Rule 60(b)(6) confers "a broad equitable power to do justice." *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010). Nevertheless, neither the Supreme Court nor the Sixth Circuit has instructed that *Martinez* as expanded by *Trevino* may constitute exceptional circumstances for purposes of Rule 60(b) relief.

In sum, although the Sixth Circuit has now concluded *Martinez* and *Trevino* are applicable to Tennessee cases, neither the Sixth Circuit nor the United States Supreme Court has ruled these cases qualify as "exceptional circumstances" required for Rule 60(b)(6) relief. Therefore, without further direction from the Sixth Circuit or Supreme Court, the Court does not conclude these cases, alone, qualify as "exceptional circumstances" required for Rule 60(b) relief.

### D. Lack of Exceptional or Extraordinary Circumstance

Although *Martinez* and *Trevino* are applicable to Tennessee cases, the Court is not persuaded the application of *Martinez* and *Trevino*, in conjunction with other factors considered by the Court,[5]

---

[5] Considering the change in decisional law in conjunction with the additional factors considered by courts in determining whether to grant Rule 60(b) relief does not weigh in favor of reopening this case. Specifically, the Court has found no explanation for Petitioner waiting more than one year after the Supreme Court of the United States issued the *Martinez* decision before filing this instant motion, and the lack of an explanation for his delay does not weigh in Petitioner's favor. Although this is a case involving a life sentence, the state's and victims' interests in finality are significant, especially considering Petitioner was convicted more than fifteen years ago and his habeas petition was denied more than eight years ago. Therefore, based on the record as a whole, the interest in finality and comity does not appear to weigh in favor of Petitioner. The decision during habeas proceedings that the issue did not warrant a certificate of appealability does not weigh in Petitioner's favor. Finally, as explained in the next section of this memorandum, Petitioner has not demonstrated his claims of ineffective assistance of trial counsel are substantial or that his initial state habeas attorney was ineffective as required by *Martinez*, 132 S. Ct. at 1320 and *Trevino*, 133

and the facts of this case, meets the Rule 60(b)(6) "exceptional circumstance" standard under Supreme Court or Sixth Circuit precedent. *See Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) (ruling that a change in the tolling rules applicable to the habeas corpus statute of limitations did not resurrect a habeas petition that had been dismissed as untimely in accordance with the Circuit's then-prevailing precedent at the time interpretation of 28 U.S.C. § 2244(d)(2) and it was "hardly extraordinary that subsequently, after petitioner's case was no longer pending, th[e] [Supreme] Court arrived at a different interpretation"); (*Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) ("It is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." (citing *Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6) . . . .").

The Court is guided by the recent development on which Respondent relies, the Sixth Circuit's decision in *McGuire v. Warden, Chillicothe Correctional Inst.,* 738 F.3d at 750, wherein McGuire*,* a death row inmate, relying on *Trevino,* was attempting to reopen his habeas petition to litigate his claim that trial counsel was ineffective in failing to uncover and present additional mitigation evidence during his sentencing hearing. In its analysis, the Sixth Circuit reiterated that "[i]t is well established that a change in decisional law is usually not, by itself, an extraordinary circumstance meriting Rule 60(b)(6) relief." *Id.* at 750. The Sixth Circuit noted however, that although an intervening law does not generally permit the reopening of finally decided cases, that even if it does in some truly extraordinary case, *McGuire* was not such a case. *Id.*

---

S.Ct. at 1921; thus, the Court is unable to conclude any of Petitioner's ineffective assistance of counsel claims weigh in his favor.

Recognizing that "[t]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of the facts[,]" the Sixth Circuit explained that *Trevino* did not change the balance of these facts sufficiently to require Rule 60(b) relief for several reasons. *Id.* First, the *McGuire* Court noted "it is solely a change in the law 'by itself' that could even arguably provide for relief from the final judgment in this case[]" because the only new development since the denial of *McGuire's* federal habeas petition was the *Trevino* decision, as there were no newly developed facts. *Id.*

The Sixth Circuit then explained "the change in the law resulting from the recent *Trevino* decision is flatly not a change in the constitutional rights of criminal defendants, but rather an adjustment of an equitable ruling by the Supreme Court as to when federal statutory relief is available. The Supreme Court disclaimed any change in the constitutional ground rules for determining guilty or innocence in a criminal case in *Martinez*, instead basing the decision on the courts' equitable power." *Id.* at 751 (citation omitted).

In the third prong of its analysis, the Sixth Circuit explained "while we need not determine whether *Trevino* applies to Ohio cases, it is not obvious that *Trevino* applies here." *Id.* "Fourth, if *Trevino* changed the law in some Ohio cases and even if a pure change in law could warrant Rule 60(b)(6) relief in truly extraordinary cases, there is nothing extraordinary about this case because the underlying reasons for the *Trevino* gloss on *Martinez* at best apply weakly in this case."

The Sixth Circuit observed that "McGuire on direct appeal did make a challenge to the effectiveness of trial counsel with second-tier appellate counsel whose effectiveness is not now at issue[,]" and concluded his claim of ineffective assistance of counsel was not substantial. The Sixth

14

Circuit explained,

> To be successful under *Trevino,* moreover, McGuire must show a 'substantial claim of ineffective assistance, *Trevino,* 133 S.Ct. at 1918, and this requirement applies as well to the prejudice portion of the ineffective assistance claim. McGuire's claim, . . . is likely not sufficiently substantial to meet this element of the *Martinez* exception.

*Id.* at 752. The Sixth Circuit reviewed Petitioner's claim and concluded the ineffective assistance of counsel claim was not substantial. *Id.* at 752-58.

Therefore, to be successful under *Trevino*, a petitioner "must show a substantial claim of ineffective assistance, . . . and this requirement applies as well to the prejudice portion of the ineffective assistance claim[s]." *McGuire,* 738 F.3d at 752. For the reasons explained below, Petitioner has not shown a substantial claim of ineffective assistance of counsel or any exceptional circumstances requiring Rule 60(b) relief.

1. *Trial Counsel's Failure to Investigate*

In his first claim, Petitioner alleges post-conviction counsel was ineffective for failing to present and appeal the claim that trial counsel failed to investigate and interview witnesses to support Petitioner's alibi defense. Even though *Martinez* and *Trevino* are applicable to Tennessee cases, any allegation that Petitioner's state post-conviction counsel was ineffective on appeal or ineffective for any other reason than failing to raise a meritorious trial counsel error, does not warrant any consideration in this proceeding. *See Martinez v. Ryan,* 132 S.Ct. at 1319.

Therefore, the Court discerns Petitioner contends post-conviction counsel was ineffective for failing to properly raise the claim that trial counsel ineffectively failed to interview all of his witnesses and present them at trial to testify in support of his alibi defense. Petitioner lists the names of eight alleged witnesses and their purported testimony (Court File No. 25). Petitioner, however,

has not submitted affidavits from these alleged witnesses nor is his Rule 60(b) motion signed under penalty of perjury.[6]

To put this claim into perspective, the Court first considers the summary of evidence in the opinion of the Court of Criminal Appeals on direct appeal, and second, the Tennessee appellate court's summary of the facts of the alibi defense on post-conviction appeal:

> Shortly before 11:00 p.m. on April 13, 1994, Edward Ray Horner was working as a clerk at the Golden Gallon convenience store in Red Bank. Two men entered the store. One man wore an athletic starter jacket and white cap. The other man, wearing a bulky jacket and a ski mask, engaged in a struggle with Mr. Horner which resulted in his receiving a shotgun wound to his abdomen. He died a short time later. The crime was captured in part on surveillance cameras, which showed that a number of items on the front sales counter were disarranged and/or had fallen onto the floor. The shooting also was witnessed by a customer, but he was unable to provide a description of the shooter.
>
> As a result of the publicity received after the shooting, an individual came forward and provided the police with information about her niece, Emily Nealy, and Nealy's boyfriend, Senneca Harris. Further interviews led police to other persons ultimately identified as being involved in the murder, including the defendant, Milton Lee Cooper.
>
> Three individuals involved in the events testified against the defendant at his trial: Emily Nealy, Timothy Gamble, and Odis Lawson, Jr. At the time of trial Gamble had already entered a plea of guilty to being an accessory after the fact and Odis Lawson had pled guilty to criminal responsibility for facilitation of first degree murder. Nealy, a juvenile, had neither been charged nor reached any agreement with the state when she testified. The two men had prior criminal convictions, and Emily Nealy had a prior juvenile record.
>
> According to the testimony of these three individuals, they all lived in or around the Westside projects in Hamilton County, Tennessee. Early on April 13, 1994, defendant Milton Lee Cooper, Timothy Gamble, and Senneca Harris decided to go to Hamilton Place Mall and snatch a purse. They used a car belonging to the defendant's girlfriend, Felicia Tremell. They asked Emily Nealy, Harris' girlfriend,

---

[6]     Petitioner submitted the affidavit of Joyce E. Hicks which is based on hearsay.  Ms. Hicks, however,  is not one of the witnesses Petitioner identified in this claim nor does she aver she was with him at the time the crime was committed (Court File No. 34).

to follow them in her automobile and act as a distraction so that they could more easily rob their victims. Nealy followed the three men in a separate car. On the way to the mall she changed her mind and returned to the Westside projects. The three men continued, however, and did rob an elderly woman of her purse. During this incident Timothy Gamble drove the car and Senneca Harris snatched the purse. Defendant remained in the back seat of the car. The three then returned to Westside and parked the car by a dumpster several blocks from the projects.

Because Cooper had used her car in the robbery, he told his girlfriend, Felicia Tremell, that her car had been stolen. She called and reported that fact to the police. While Tremell waited to speak to officers, the other individuals left the vicinity.

Later that evening defendant Cooper, Nealy, Harris, Gamble and Lawson congregated again in Nealy's Mazda in a parking lot near the projects. They drank beer, smoked marijuana, and began discussing whether to commit armed robberies. Harris had with him a black athletic starter jacket. At one point defendant went to his house and returned to the car with a jacket and a sawed-off shotgun.

The group then traveled toward Hixson. They went to a Conoco gas station on Main Street and purchased more beer. They proceeded to drive by other gas stations as well, and Lawson went into one store. However, they observed no potential robbery victims. At some point Nealy again decided that she did not wish to be involved in the plan and was let out of her car near the river. She washed off in the river and then walked around and waited on the riverbank for the group to return and pick her up.

At about 10:15 p.m. a black male wearing a black Raiders starter jacket and ball cap entered a Golden Gallon convenience store where Sandra White worked as a clerk. Lawson testified that he was the man and that he borrowed the jacket from Harris because his own jacket had a distinctive symbol on it. White testified at trial and identified a photograph of Lawson. She stated that Lawson looked around the store, informed her that he could find no Red Bull beer, and asked her to check the cooler. White, being scared and suspicious, motioned toward a van just entering the parking lot and told Lawson that her "friends" were coming. Lawson asked her about what market might stock Red Bull beer, and she immediately gave him directions to another Golden Gallon store.

The individuals then drove to the Golden Gallon store at which Edward Ray Horner was working. They parked the car and Odis Lawson went toward the store. Shortly thereafter he returned to the car and indicated that there were few people inside and no police in the vicinity. At that point defendant Cooper, carrying his sawed-off shotgun, exited the car with Senneca Harris and headed toward the store. Cooper also took his jacket, which he normally wore inside-out. Harris was wearing his own starter athletic jacket and a white cap. Defendant and Harris entered the Golden Gallon store. One eyewitness saw the shooting but could not identify the shooter.

17

Surveillance camera photographs showed a male in a ski mask and a jacket later identified as defendant's. That male engaged in a struggle with Horner and shot him. Officers who arrived on the scene later found that items on the front sales counter were moved around and knocked to the floor.

Defendant, still holding the shotgun, ran with Harris back to the car and told Gamble and Lawson to hurry. According to Gamble and Lawson, both men seemed nervous. Gamble testified that Harris asked defendant "Why did you shoot him?". [sic] Lawson drove the car away. The group then picked up Nealy at the river, and returned to the Westside projects. According to Lawson, the defendant pulled the gun and his jacket out of the car, left, and then returned without the two items. The group then dispersed.

*State v. Cooper,* 1998 WL 573409, *1-2 (Tenn. Crim. App., Sept. 9, 1998). The following is the

alibi evidence analyzed on post-conviction appeal:

From our review of the trial record, we note that the testimony purporting to establish an alibi for the Petitioner was presented by Lee Fuquay.[7] Fuquay testified at trial that on April 13, 1994, he worked at Bee's Restaurant until 8:30 p.m. He recalled that after work, he and Antonio Foster stopped by a store to buy beer and cigarettes and then went to the Defendant's house around 9:00 p.m. Fuquay testified that he told the Defendant that they were going to the home of a person named JoAnn. According to Fuquay, the Defendant stated, "I'll meet you-all around there."

Fuquay testified that as soon as they parked at JoAnn's place, the Defendant "was coming through the front door" and that is when they "started drinking." He stated that JoAnn's house is about a two or three-minute walk from Felecia Tremell's house, where the Defendant was living at the time. Fuquay testified that they "just drank and listened to music and stood out on the porch" at JoAnn's house. He testified that he left JoAnn's house around 3:30 a.m., and the Defendant was still there.

On cross-examination, Fuquay testified that at the time of trial, he had known the Defendant for about two and a half years. He stated that when he first arrived at the Defendant's place, the Defendant told him that his car had been stolen. According to Fuquay, the Defendant stated that he reported the stolen car to police. He stated that he was inside JoAnn's house when the Defendant arrived. Fuquay testified that when the Defendant arrived, Antonio Foster, JoAnn, and a "white girl[ ]" were also there. Fuquay testified that they drank "about four or five quarts" that evening. He stated

---

[7] Although a transcript of the trial was not included in the record on appeal, we may, as the Petitioner points out, take judicial notice of the records of our Court. *See Delbridge v. State*, 742 S.W.2d 266, 267 (Tenn.1987). This was footnote 2 in the state appellate court's opinion.

that at the time, JoAnn and Odis Lawson were dating. He maintained that the Defendant was still at JoAnn's house when he left around 3:30 a.m.

The post-conviction court, in determining that an alibi defense was not fairly raised by the evidence, stated the following:

> Now, the other issue is the alibi issue which is brought up, and I was looking over that. There was really overwhelming proof in this case of [the Petitioner's] guilt. There were a number of the co-defendants who were over there with him at the store when this occurred. One of them testified he went in with a shotgun, they went by the house and stopped and he picked up the shotgun and the jacket. This was an unusual jacket, because everybody testified he wore it inside out. The jacket was on the videotape, the co-defendants identified the jacket. Even Felicia Trammel [sic], his girlfriend, was called to come in, the mother of his child was called to testify. She identified the jacket as being his, the jacket that was introduced and identified as the one that the person was wearing.

> She also said that her car was stolen, she reported it stolen, then later found out it wasn't stolen, that [the Petitioner] told her to say it was stolen. So she wasn't a very helpful witness, but she corroborated what the co-defendants had said.

> There was no proof whatsoever to support an alibi defense, except for the one witness, Lee Fuqua, that the defense called. He knew the [Petitioner] and he knew O.J., Otis Lawson, the other co-defendant in the case. Said he got off from work and went to the [Petitioner's] house, that they were going to "kick it," started drinking at Joanne's house about 9:00, they listened to music, stayed around and they left about three. He was cross-examined from the fact-of course, he admitted that O.J. was a member of a gang, had the Cript signs on his arms and talked about the original gangsters. And he, of course, talked about [the Petitioner], the fact that he and O.J. didn't like each other.

> He talked about [the Petitioner], on cross-examination, was living with Felicia at the time, who was the mother of his child, and he was [a] close friend of [the Petitioner's]. And there was some question about the period of time, how much time he was with him, and whether this covered the entire period of time or whether it only covered a short period of time.

> Based upon that one witness, this court did not feel that the defense

19

> fairly raised the issue of alibi. It was very ambiguous, this one
> witness, and in light of the overwhelming proof that the [S]tate had
> as to [the Petitioner's] presence, identification of the jacket, his
> participation in this crime, the corroborating testimony about his part
> in it, I just feel like that that alibi defense, through this one witness
> who was not real clear and it did not cover the entire-I just did not
> feel that the issue was fairly raised, so, therefore, I felt like there was
> no need to charge the jury on alibi.

> We agree with the post-conviction court that the defense of alibi was not fairly raised
> by the evidence. Fuquay was the only witness that testified regarding the Petitioner's
> possible alibi. He stated that he met the Petitioner around 9:00 p.m. on the night of
> the offense and that when he left the house where they had been "kick[ing] it" around
> 3:30 a.m. the next morning, the Petitioner was still there. Thus, Fuquay purports to
> outline a time period covering more than six and one-half hours. However, Fuquay
> did not testify that he was with the Petitioner at 11:00 p.m., when the offense was
> committed. Nor does Fuquay ever state that he was with the Petitioner or that the
> Petitioner was physically in his presence for the entire period of time that he
> describes. In addition, Fuquay admitted that he had been drinking that evening.
> Finally, during cross-examination, Fuquay stated that he often associated with the
> same group of people, which included the Petitioner, at about the same time of day.
> He claimed to remember that day in particular because the Petitioner told him that
> his car had been stolen.

*Cooper v. State,* 2002 WL 31548093, at *6-8 (Tenn. Crim. App. Nov. 18, 2002)..

In addition, Petitioner states trial counsel testified at his post-conviction hearing that he

determined there was a credibility issue with the proposed witnesses (Court File No. 25, p. 9).

Petitioner complains, however, that there are no witness statements in the record to show the

interviews were actually conducted. The Court of Criminal Appeals of Tennessee summarized trial

counsel's testimony regarding the alibi issue during post-conviction proceedings as follows:

> Regarding the alibi issue, Duval testified that he discussed with the Petitioner the
> possibility of presenting evidence that the Petitioner was not at the scene of the
> offense. According to Duval, the Petitioner "made available for [counsel] several
> people whom he believed would serve as alibi witnesses and [counsel] talked to
> everyone that [the Petitioner] wanted [them] to talk to.

*Id.*, at *4.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that the performance prejudiced the defense resulting in a failure to produce a reliable result. *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Here, Petitioner claims he had other witnesses that would have testified he was partying at JoAnn's house with Mr. Fuquay. However, as Petitioner admits, trial counsel testified he interviewed Petitioner's witnesses but due to credibility issues, he did not present them. Petitioner has not submitted any evidence that counsel's tactical decision not to present these witnesses was unreasonable. Petitioner has failed to submit the affidavits of these witnesses, and his claims of the witnesses purported testimony are not under oath. Consequently, there is no substantial credible evidence from which the Court may even infer these witnesses did not have credibility issues and would have testified favorably.

Based on the evidence supporting Petitioner's convictions and the lack of any credible evidence to support this claim of ineffective assistance of counsel, Petitioner clearly has neither submitted substantial credible evidence demonstrating trial counsel's strategic decision not to present the witnesses he has identified amounts to deficient performance nor sufficient evidence of prejudice to make a successful *Strickland* ineffective assistance of counsel claim. The lack of statements in trial counsel's file alone, does not equate to deficient performance. Indeed, there is nothing before the Court from which it can even infer Petitioner can show a reasonable probability counsel's alleged unreasonable failure to present these witnesses–whom trial counsel determined had credibility issues–the fact finder would have had reasonable doubt regarding the petitioner's guilt. *Strickland,* 466 U.S. at 695.

Accordingly, Petitioner has not raised a substantial ineffective assistance of counsel claim

as required by *Martinez* and *Trevino* or made a sufficient showing of any exceptional or extraordinary circumstance requiring Rule 60(b) relief.

2.  <u>*Lack of Video Expert*</u>

Petitioner's second claim is confusingly pled.  Although Petitioner seemingly attacks post-conviction counsel for not having the crime scene video analyzed by an expert, the Court discerns Petitioner is claiming that although the crime scene video footage was entered into the trial record as exhibit number twenty-seven, trial counsel was ineffective for failing to have an expert examine and testify Petitioner was not on the video that captured a portion of the crime.

Only a portion of the crime was captured on surveillance cameras.  There is no evidence the actual shooting and shooter were fully and clearly captured on the surveillance cameras.  Indeed, the perpetrator that appears to have been Petitioner was wearing a ski mask.  Nevertheless, the video footage was introduced during trial, so the jury apparently viewed the video and reached their own conclusions based on what they observed.  Petitioner's self-serving statement (not made under oath) that counsel deficiently failed to present an expert to testify he is not on the video, is not based on any factual credible factual support.  Such a bald claim is insufficient to raise a credible claim of deficient performance and demonstrate a reasonable probability that the outcome of Petitioner's trial would have been different had an expert been hired.

Petitioner has clearly failed to present any substantial credible evidence demonstrating trial counsel's failure to present an expert regarding his presence on the surveillance video amounts to deficient performance and any evidence of prejudice to make a successful *Strickland* ineffective assistance of counsel claim.  Petitioner has not presented any credible evidence suggesting an expert would have testified the perpetrator was not him or any evidence suggesting presentation of expert

22

testimony in this regard would have changed the outcome of this case. The jury viewed the video and all the other evidence inculpating Petitioner, and found him guilty beyond a reasonable doubt. Petitioner has not presented any substantial credible evidence from which the Court can even infer that Petitioner can show a reasonable probability that, but for counsel's alleged unreasonable error, the fact finder would have had reasonable doubt regarding Petitioner's guilt. *Strickland,* 466 U.S. at 695.

Accordingly, for these reasons, application of *Martinez* and *Trevino* here does not impact the procedural bar imposed upon Petitioner's post-conviction claim for ineffective assistance of counsel for failing to present an expert as he has not demonstrated his claim of ineffective assistance of counsel is substantial or made a sufficient showing of any exceptional or extraordinary circumstance requiring Rule 60(b) relief.

3.     *Failure to Introduce Fingerprint Evidence*

In his third claim, Petition contends counsel was ineffective for failing to introduce the fingerprint evidence obtained from the cash register, which would have proven his prints were not on the register. According to Petitioner, the surveillance video showed the perpetrator touched the cash register with his bare hands and left prints on the cash register. Once again, Petitioner's bald claims do not include any factual support. Petitioner's claim that the surveillance video shows the perpetrator left prints on the cash register is mere speculation and incredible. Nevertheless, Petitioner's claim counsel deficiently failed to present expert testimony his prints were not found on the cash register fails to demonstrate a reasonable probability that the outcome of Petitioner's trial would have been different if counsel had retained an expert. Indeed, there was no evidence introduced at trial that Petitioner's fingerprints were on the cash register, yet the jury still returned

23

a verdict of guilty. These self-serving statements, which are not made under penalty of perjury or supported by any evidence in the record, are insufficient to demonstrate a substantial ineffective assistance of counsel claim.

The jury had strong testimonial and physical evidence of petitioner's guilt to rely upon, and the lack of Petitioner's fingerprints on the cash register does not demonstrate his innocence as he alleges, or demonstrate a reasonable probability that, but for counsel's alleged error, the jury would have had reasonable doubt regarding Petitioner's guilt. Even assuming Petitioner's allegations are true, the jury saw the video tape and they had no evidence Petitioner's fingerprints were on the register, yet they still found him guilty beyond a reasonable doubt. The lack of Petitioner's fingerprints on the cash register does not diminish his culpability. In light of the strong testimonial and physical evidence of Petitioner's guilt, and Petitioner's failure to submit any evidence from which the Court may reasonably infer prejudice, this claim is not substantial.

Accordingly, for these reasons, application of *Martinez* and *Trevino* does relieve Petitioner from the procedural bar imposed on his claim that counsel was ineffective in relation to fingerprint evidence to be lifted, as he has not demonstrated a substantial ineffective assistance of counsel claim or made a sufficient showing of any exceptional or extraordinary circumstance warranting Rule 60(b) relief.

4.    *Presenting Dr. King as a Defense Witness*

In his fourth claim, Petitioner faults trial counsel for calling Dr. King to testify arguing, Dr. King introduced the substance of the crime into the record. Petitioner is incorrect. The evidence presented by the State clearly demonstrated the substance of the crime, i.e., the victim was shot and killed. Petitioner submitted a small portion of Dr. King's testimony. A review of the record reflects

the prosecution's proof indicated the perpetrator was involved in a struggle with the victim when he shot him. Thus, a jury could have logically concluded that the perpetrator must have been in very close proximity to the victim when he was shot. Dr. King testified as to the wound and that although the range of fire was close it was not right next to the body but seemingly more than two feet away (Court File No. 25-1, pp. 37-40). Undoubtedly, counsel presented this testimony in an attempt to create reasonable doubt about the state's claim that Petitioner shot the victim while involved in a struggle which seemingly indicates the range would have been closer than two feet.

Petitioner has not demonstrated that this tactical decision fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. When evaluating counsel's performance, the Court is mindful of the *Strickland* Court's instructions that "[t]here are countless ways to provide effective assistance of counsel. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* Consequently, Petitioner has not presented any credible proof from which the Court may conclude counsel performed deficiently and as a result, Petitioner was prejudiced.

Accordingly, application of *Martinez* and *Trevino* offers Petitioner no relief as he has failed to present a substantial claim of ineffective assistance of counsel or a sufficient showing of any exceptional or extraordinary circumstances requiring Rule 60(b)(6) relief.

5.     <u>*Constructive Amendment of Indictment*</u>

In his final claim, Petitioner alleges trial counsel failed to object to the jury instructions that were a constructive amendment to the indictment. Petitioner alleges the indictment charged "Milton Lee Cooper . . . did unlawfully and recklessly kill Edward Horner during the perpetration of especially aggravated robbery, . . ." (Court File No. 25). Petitioner complains the jury was charged "that the killing was committed in the perpetration of or the attempt to perpetrate the crime of

25

especially aggravated robbery . . . " (Court File No. 25). Petitioner contends that since the indictment did not include the attempt language, the inclusion of that language in the jury instructions amounted to a constructive amendment of the indictment. Although Petitioner cited to the transcript and seemingly quoted portions of the jury instructions, he failed to include the pertinent pages with his filings. Nevertheless, for the reasons explained below, the jury instruction was not unconstitutional.

The Sixth Circuit defines constructive amendments as "variances occurring when an indictment's terms are effectively altered by the presentation of evidence *and* jury instructions that so modify essential elements of the offense charged that there is a substantial likelihood the defendant [was] convicted of an offense other than that charged in the indictment." *United States v. Hynes,* 467 F.3d 951, 961 (6th Cir. 2006) (emphasis added) (internal punctuation and citation omitted). The burden is on Petitioner to prove a variance has occurred and the variance rises to the level of a constructive amendment. *Id.* at 962. Constructive amendments to indictments are *per se* prejudicial as violating the Fifth Amendment grand jury guarantee and require reversal of the conviction. *United States v. Kuehne,* 547 F.3d 667, 683 (6th Cir. 2008). A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner so that the jury is permitted to convict a defendant of an offense different from or in addition to the offenses charged in the indictment. *See United States v. Douglas,* 634 F.3d 852, 859 (6th Cir. 2011).

Here, the indictment charged Petitioner with the first degree murder of the victim during the perpetration of especially aggravate robbery. Notably, Petitioner does not claim the indictment's terms were effectively altered by the presentation of evidence; he claims only the jury instructions

26

constructively amended the indictment. "The indictment charging petitioner with felony murder cited Tennessee Code Annotated section 39-13-202, the appropriate statute in the criminal code. Tenn. Code Ann. § 39-13-202 (1991). Petitioner was indicted in 1995 while the 1991 replacement volume of the Tennessee Code Annotated was the governing law." *Cooper v. Carlton,* 1012 WL 1523960, *3 (Tenn Crim. App. April 30, 2012) (denying Petitioner habeas relief) Tennessee's first degree murder statute under which Petitioner was indicted, in pertinent part, provided: "(a) First degree murder is: (2) a reckless killing of another committed in the perpetration of, or *attempt to perpetrate* any . . . robbery[.]" Tenn. Code Ann. § 39-13-202 (1991) (emphasis added). According to the Tennessee Criminal Court of Appeals, this statute was referenced in Petitioner's indictment. "The indictment referenced the statute defining felony murder and described the offense, which provided notice to petitioner of the charged offense." *Cooper v. Carlton,* 1012 WL 1523960, at *4.

Therefore, the indictment was not so vague or indefinite as to mislead Petitioner or impede the preparation of his defense to the felony murder count. The indictment clearly cited the statute notifying Petitioner that the felony murder could be based on the perpetration or attempt to perpetrate a robbery. In addition, attempt to commit especially aggravated robbery is a lesser included offense of committing an especially aggravated robbery. *See State v. Richmond,* 90 S.W.3d 648, 660 (Tenn. 2002) (concluding attempted aggravated robbery is a lesser-included offense of aggravated robbery and explaining the trial court "must" provide instruction to the jury on "*all lesser-included offenses* if warranted by the evidence" regardless of the theory of the State or defense).

To satisfy the Sixth Amendment, an indictment must "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States,* 369 U.S. 749, 764 (1962). Under

federal law, when a defendant is charged with the completed crime, he still may be convicted of an attempt to commit the completed crime even if the indictment had not charged him with attempt at all. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 106-11 n.7 (2007) (Fed. R. Crim. P. 31(c) provides a defendant may be found guilty of an attempt to commit the offense charged).

The jury charge instructing the jury they must find the murder was perpetrated during the perpetration or attempt to perpetrate a robbery did not alter the essential elements of the offense as charged in the indictment. The facts and circumstances of the murder during an attempt to commit especially aggravated robbery charge were the same as those of the murder committed during the perpetration of the especially aggravated robbery charge, with the only difference being whether Petitioner completed the robbery. Thus, the jury instructions did not rise to the level of a constructive amendment.

At most, Petitioner's allegations amount to a variance claim for which he must demonstrate prejudice. "[W]here the jury instructions alone differ from the indictment to charge the same crime, but on an alternative theory, a mere variance occurs and a defendant must demonstrate prejudice." *United States v. Kuehne,* 547 F.3d 667, 683 (6th Cir. 2008).

"A variance occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Martin v. Kassulke*, 970 F.2d 1539, 1542 (6th Cir. 1992). A variance is not "*per se* prejudicial. . . . Rather, reversal is warranted only where a defendant proves that (1) a variance occurred and (2) that the variance affected a substantial right of the defendant." *United States v. Kuehne,* 547 F.3d at 683 (internal punctuation and citations omitted). "The substantial rights of the defendant are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the

general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Id.* (internal punctuation and citations omitted).

Petitioner had sufficient notice, when charged with the greater offense of murder during the perpetration of especially aggravated robbery, that he might also have to defend against murder during the perpetration of the lesser included offense of attempt to commit especially aggravated robbery. *Seymour v. Walker,* 224 F.3d 542, 558 (6thCir. 2000) ("[S]everal federal courts have held that an instruction on a lesser included offense may be given over the defendant's objection, because the defendant has sufficient notice, when charged with the greater offense, that she may also have to defend against the lesser charge." (citations omitted)). Petitioner has not presented any evidence from which the Court may even infer a constitutional violation occurred as a result of this jury instruction. Specifically, Petitioner does not claim and the Court does not find anything in the record indicating Petitioner's ability to defend himself at trial was prejudiced, that the indictment was insufficient to bar subsequent prosecutions, or causing the Court to question the general fairness of the trial. Therefore, Petitioner has not demonstrated the variance affected a substantial right.

In sum, there was no constructive amendment of the indictment and there was no variance that affected a substantial right of Petitioner's. Because there was no constructive amendment or variance that affected a substantial right of Petitioner by the jury instructions, counsel's failure to object to the "attempt"language in the jury instruction did not prejudice Petitioner; hence, counsel was not ineffective.

Accordingly, Petitioner's procedural default of this claim cannot be excused, because, in addition to failing to present a substantial claim of ineffective assistance of counsel as required by *Martinez* and *Trevino,* Petitioner has demonstrated no exceptional or extraordinary circumstance

requiring Rule 60(b)(6) relief.

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's Rule 60(b) motion will be **DENIED** (Court File No. 25).  Although *Martinez* and *Trevino* are applicable to Tennessee convictions, the Court declines to find these cases alone, constitute extraordinary circumstances required for Rule 60(b)(6) relief without direction from the Sixth Circuit or Supreme Court.

In addition, although the *Martinez* and *Trevino* decisions apply to Tennessee cases, Petitioner has not met his burden of raising a substantial claim of ineffective assistance of counsel. Accordingly, after weighing the additional factors (including the competing policies of the finality of judgments and that justice be done in light of all the facts) along with Petitioner's claims cumulatively, the record does not support a finding of "exceptional circumstances" meriting relief under Rule 60(b)(6).

Although the case law on effective assistance of post-conviction counsel and its application to Rule 60(b) motions is evolving, based upon the circumstances alleged by Petitioner, reasonable jurists could not disagree on whether this Court's denial of the Rule 60(b)(6) motion is adequate to deserve further review.  Therefore, a certificate of appealability will be **DENIED**.

An appropriate order will enter.

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

30